IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RAYMA DALTON,

            Plaintiff,

v.                          //   CIVIL ACTION NO. 1:14CV71
                                     (Judge Keeley)


OMNICARE, INC., an Ohio Corporation,
ACT FAST DELIVERY, INC., a Texas
Corporation, and ACT FAST DELIVERY
OF WEST VIRGINIA, a West Virginia
Corporation,

            Defendants.


MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING
IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]

        Pending before the Court are the motions for summary judgment

filed by the defendants, Omnicare, Inc., Act Fast Delivery, Inc.,

and Act Fast Delivery of West Virginia.   For the reasons that

follow, the Court **GRANTS** Omnicare's motion (Dkt. No. 59) and **GRANTS**

**IN PART** and **DENIES IN PART** Act Fast's motion (Dkt. No. 57).


BACKGROUND

        This case concerns the employment and termination of the

plaintiff, Rayma Dalton ("Dalton"), who worked as a courier for Act

Fast Delivery of West Virginia ("AFDWV").[1] The questions presented

on summary judgment include:

---

[1] AFDWV contends that, although Act Fast Delivery, Inc., is
owned by the same individuals who own AFDWV, no parent-subsidiary
relationship exists between the two entities (Dkt. No. 58 at 5), an
assertion Dalton did not dispute.

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

1) Whether AFDWV and Omnicare, Inc., were Dalton's joint employers;

2) Whether AFDWV improperly classified Dalton as an independent contractor;

3) Whether AFDWV violated the public policy of West Virginia, the Fair Labor Standards Act, and the West Virginia Human Rights Act by retaliating against Dalton;

4) Whether AFDWV violated the West Virginia Wage Payment and Collection Act by failing to pay Dalton wages earned for wait time and by forcing her to loan a company scanner and purchase a company uniform; and,

5) Whether AFDWV intentionally inflicted emotional distress on Dalton by terminating her.

## I.   Factual Background[2]

In January, 2007, Dalton began working as an independent contractor for Courier Services, a company that provided delivery services to Omnicare, Inc. ("Omnicare") (Dkt. No. 65-3 at 2). As a courier, Dalton delivered pharmaceuticals from the Omnicare facility in Morgantown, West Virginia, to Omnicare's clients,

---

[2] As it must, the Court construes the facts in the light most favorable to Dalton, who is the non-movant. See Ussery v. Manfield, 786 F.3d 332, 333 (4th Cir. 2015).

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

mostly long-term care facilities.  <u>Id.</u>  It was Omnicare's practice to provide office space, free of charge, within its Morgantown facility to whichever courier service it had contracted with at that particular time (Dkt. No. 63-4 at 3).

In approximately 2009, Courier Services lost the Omnicare contract to Business as Usual, which also provided courier services (Dkt. No. 65-3 at 3).[3]  Dalton continued on as a courier and dispatcher for Business as Usual, which kept all of Courier Services' employees.  <u>Id.</u>  As a courier, Dalton was classified as an independent contractor and paid by the mile.  <u>Id.</u>  Business as Usual classified Dalton as an employee, however, for her services as a dispatcher, paying her by the week.  <u>Id.</u> at 4.

In June, 2012, AFDWV won the Omnicare contract (Dkt. No. 59-2 at 5; Dkt. No. 59-3).  Dalton, who continued performing her courier duties as she had for Business as Usual, signed an independent contractor agreement with AFDWV on August 30, 2012 (Dkt. No. 59-2 at 104).  She did not continue serving as a dispatcher, however. <u>Id.</u> at 5.

---

[3] It is Omnicare's standard practice to periodically request proposals for courier services "to take advantage of economy scale and pricing" (Dkt. No. 58 at 6).

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

Although Dalton understood that AFDWV was classifying her as an independent contractor, she believed that she was an employee (Dkt. No. 59-2 at 41, 94, 108). Dalton filed her personal income tax return as an independent contractor, taking deductions for business expenses. Id. at 42, 77-78. Additionally, she used her own vehicle, cell phone, e-mail address, and gas to perform her deliveries (Dkt. No. 58 at 7). Dalton was required, however, to purchase and wear a shirt with the AFDWV logo to identify herself when she made deliveries. Id. Furthermore, AFDWV required her either to provide her own scanner or to lease one from AFDWV.[4] Id. If drivers leased a AFDWV scanner, 3.5% was deduced from their pay (Dkt. No. 59-2 at 43).

In the course of her duties as a courier, Dalton performed "sweeps," deliveries based on a pre-established daily route, and "stats," emergency deliveries of drugs to a nursing home (Dkt. No. 58 at 7). Dalton ran the 10:00 A.M. and 2:00 P.M. sweeps, working approximately 20 hours per week plus any stats (Dkt. No. 59-2 at

---

[4] AFDWV Regional Manager Shadd Friday testified that drivers could download an app and use their personal cell phones in lieu of scanners (Dkt. No. 57-5 at 4). Dalton, however, testified that drivers had to use the scanners provided by AFDWV (Dkt. No. 59-2 at 43). According to Don Smith, AFDWV employee, drivers "now" have to use their own cell phone as a scanner (Dkt. No. 59-7 at 5).

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

17-18). She was paid a set dollar amount for each sweep and stat, plus mileage for each stat over a set amount of miles. Id. at 18, 20. AFDWV also paid drivers for "wait time," time spent waiting for Omnicare employees to prepare the delivery totes; after waiting 46 minutes past the scheduled sweep, drivers were paid $5 every 15 minutes. Id. at 32. The couriers sign up each week for their sweep schedule, and pick up stats as they wish (Dkt. No. 59-4 at 5-7; Dkt. No. 59-6 at 5).

On February 5, 2013, Dalton accepted a role as a lead driver for AFDWV, which employed 20 to 25 drivers at the Morgantown location (Dkt. No. 59-2 at 22, 27). AFDWV paid her $40 per day, seven days per week, to recover the drivers' route sheets, track their stop counts, and turn in payroll information. Id. at 22-23. Additionally, Dalton continued to run sweeps and stats. Id. at 22.

In March, 2013, Dalton was promoted to lead driver/manager and compensated $1,200 every two weeks. Id. at 28. Although AFDWV still classified her as an independent contractor, Dalton received a company laptop. Id. at 29. In her role as manager, Dalton hired new employees, scheduled sweep routes, and sent in stop count reports to Omnicare. Id. at 29-30.

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING
IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

When Omnicare received customer complaints relating to the behavior of an AFDWV courier or the delivery of pharmaceuticals, it was Omnicare's standard practice to conduct a root cause analysis and discuss the problem with AFDWV, which would then handle the complaint (Dkt. No. 57-4 at 6; Dkt. No. 59-2 at 82; Dkt. No. 59-5 at 8). If Omnicare's customer requested that a driver be reassigned to a different route, Omnicare would relay that request to AFDWV (Dkt. No. 57-4 at 6; Dkt. No. 59-5 at 8-9, 11; see also Dkt. No. 57-6 at 4). Omnicare had no authority to actually reassign or terminate AFDWV drivers. Id.

In early March, 2013, Chris Lockard ("Lockard"), General Manager of the Morgantown Omnicare facility, requested a meeting with Dalton to discuss a complaint Omnicare had received from Genesis, a company that owned a significant number of nursing homes in the area (Dkt. No. 59-2 at 57-60, 91). Dalton alleges that, during that meeting, Lockard asked AFDWV to reassign three African-American couriers, Charlie Heard, O'Dell Tucker, and Tim Robertson, after narcotics went missing on the Frostburg route. Id. at 57. Jeff Pugh ("Pugh"), a warehouse supervisor for Omnicare who was present at the meeting, commented that the nursing homes on the eastern panhandle were prejudiced, following which Lockard asked

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING
IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

that AFDWV relocate the three African-American drivers to a
different route rather than lose business with those nursing homes.
Id.; see also Dkt. No. 59-6 at 9.

That night, Shadd Friday ("Friday"), regional manager for
AFDWV, drove to Morgantown to address the Genesis complaint (Dkt.
No. 59-2 at 57).[5]  After meeting with Lockard and Pugh, Friday
instructed Dalton to take the three African-American drivers off
their routes, reassign them to stat deliveries, and not call them,
all in an attempt to "phase them out."  Id. at 62.  Dalton
subsequently disobeyed Friday's instruction, reassigning the three
drivers to other routes.  Id. at 61-62.

One of the reassigned drivers, Charlie Heard ("Heard"), began
complaining to Dalton and AFDWV Regional Manager Chris Frummage
("Frummage") that he was only receiving short stat runs.  Id. at
63.  When Dalton attempted to address Heard's complaints, Frummage
"yelled" at her for sticking up for Heard.  Id. at 67-68.  Dalton
attributes her termination, in part, to the fallout from the March,
2013, meeting and her complaints to Frummage (Dkt. No. 63-3 at 17-
18).

---

[5]  According to Friday, Genesis complained regarding the
drivers' rude behavior and profanity (Dkt. No. 59-4 at 9).

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING
IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

On August 30, 2013, Dalton resigned as lead driver/manager and
returned to running sweeps and stats as a courier, complaining that
she wasn't getting any respect, and that AFDWV had been improperly
deducting scanner fees from her pay when she wasn't running
deliveries (Dkt. No. 59-2 at 47, 110).

In early October, 2013, Pugh informed Dalton that she needed
to take a stat delivery to Valley Mental Health (Dkt. No. 57-7 at
5). Because the delivery needed to occur as soon as possible, Pugh
added it to Dalton's sweep route. Dalton, however, had a scheduled
dental procedure that afternoon, and asked dispatch to have another
courier take the delivery. Id. It is uncontested that another
courier delivered the package. Id.

Around October 6, 2013, Pugh left his employment with Omnicare
and began working for AFDWV as a lead driver/manager, the position
from which Dalton had recently resigned (Dkt. No. 58 at 9). It is
undisputed that Pugh did not have the authority to discipline AFDWV
drivers when he worked at Omnicare (Dkt. No. 59-7 at 7; Dkt. No.
66-2 at 2; Dkt. No. 66-3 at 5-8). On his first day as an AFDWV
manager, however, Pugh convened an employee meeting in the parking
lot (Dkt. No. 59-2 at 52). Before the meeting began, in front of

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING
IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

20 or more AFDWV employees, Pugh walked up to Dalton and told her
that he was terminating her contract.  Id. at 52.

When Dalton asked why she was being fired, Pugh told her that
she had failed to deliver a package on her sweep the previous week.
Id.  Dalton attempted to explain that she had needed an emergency
dental procedure after a filling came out of her tooth, and that
another AFDWV employee, Don Smith, had delivered the package.  Id.
at 52-53.  Pugh expressed the opinion, however, that Dalton "had
plenty of time to get [the package] delivered and get to her
doctor's appointment or dentist appointment . . . ." (Dkt. No. 63-5
at 5).  He did acknowledge that another courier had delivered the
package on time.  Id.  When asked about AFDWV's policy regarding
termination of drivers who missed deliveries, Pugh indicated that
other drivers miss deliveries "all the time," but that not all are
terminated.  Id. at 7.

The morning after her termination, Dalton received a call from
"Trish," the AFDWV dispatch operator in Lexington, who was looking
for a courier for a stat run (Dkt. No. 63-3 at 19).  After
discovering that Dalton had been fired the previous night, Trish
remarked that Pugh had told her he would leave a package in the

9

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

warehouse on purpose to make it appear as if Dalton had left it there. <u>Id.</u>

After her termination, Dalton's general practitioner, Dr. William Mitchell, prescribed her anti-depressants and changed the dosage on her Xanax prescription, which she had taken for about ten years (Dkt. No. 59-2 at 72-74). Dalton began seeing psychologist Halle McLeod in July, 2014. <u>Id.</u> at 73. She continues to suffer from low self-esteem, insomnia, and depression. <u>Id.</u> at 76.

## II.  Procedural Background

Dalton filed suit in the Circuit Court of Monongalia County, West Virginia, on March 18, 2014 (Dkt. No. 1 at 1). On April 21, 2014, the defendants filed a notice of removal, invoking the Court's federal question jurisdiction. <u>Id.</u> at 2-3. After receiving a stipulation of voluntary dismissal, the Court dismissed Count III of Dalton's complaint, which alleged a cause of action under the National Labor Relations Act (Dkt. No. 15).

On April 10, 2015, Act Fast and AFDWV filed a motion for summary judgment, asserting the following arguments: (1) Omnicare was not a "joint employer" of Dalton; (2) AFDWV appropriately classified Dalton as an independent contractor; (3) Dalton's claims for wrongful termination, retaliatory termination, and retaliation

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

are unsustainable given her status as an independent contractor; (4) Dalton did not engage in any protected activities; (5) Dalton's claim under the West Virginia Wage Payment and Collection Act fails because she was not an employee; and, (6) Dalton's claim of intentional infliction of emotional distress is preempted (Dkt. No. 58). The Act Fast defendants also contend that the Court should dismiss Act Fast Delivery, Inc., a Texas corporation, because it has no parent-subsidiary relationship with AFDWV and was not responsible for Dalton's termination. Id. Omnicare likewise filed a motion for summary judgment on April 10, 2015, arguing that it should be dismissed from the case because it was not a joint employer of Dalton, and had no involvement in Dalton's employment or termination (Dkt. No. 60).

On May 1, 2015, Dalton opposed both motions for summary judgment, arguing that Omnicare and AFDWV were joint employers, that she is properly classified as an employee, and that her claims for retaliatory discharge, wrongful discharge, retaliation, WPCA violations, and intentional infliction of emotional distress are viable (Dkt. Nos. 63, 65). The Act Fast defendants and Omnicare replied on May 15, 2015 (Dkt. Nos. 66, 67). The matter is now fully briefed and ripe for disposition.

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING
IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

## STANDARD OF REVIEW

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(1)(A), (a). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the non-moving party. Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 207 (4th Cir. 2014). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted).

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party.  Id. at 248-52.

## DISCUSSION

### I.   Act Fast Delivery, Inc.

The Act Fast defendants contend that Act Fast Delivery, Inc., a Texas corporation, although owned by the same individuals who own AFDWV, is not a parent corporation of AFDWV, and had no involvement in the events in this case (Dkt. No. 58 at 5; Dkt. No. 57-10 at 2). Dalton, who was employed by AFDWV, did not have a contractual relationship with Act Fast Delivery, Inc., and there is no evidence that Act Fast Delivery, Inc., has a contractual relationship with Omnicare.  Id.  Further, Dalton has failed to "set forth specific facts showing that there is a genuine issue for trial" regarding Act Fast Delivery, Inc.  Anderson, 477 U.S. at 256.  The Court therefore **DISMISSES WITH PREJUDICE** Act Fast Delivery, Inc., a Texas corporation, as a defendant in this case.

### II.   Count I:  Joint Employment Relationship with Omnicare

Both Omnicare and AFDWV ask the Court to dismiss Omnicare with prejudice because (1) it was not involved in Dalton's termination,

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING
IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

and (2) it was not a joint employer of Dalton (Dkt. No. 60; Dkt.
No. 57). Dalton does not contest that Omnicare was not personally
involved in her termination. What she does assert is that Omnicare
and AFDWV were her joint employers for the following reasons.
First, Pugh, as an Omnicare employee, exercised control over AFDWV
drivers. Second, Omnicare and AFDWV share office space. Third,
Omnicare can request that certain AFDWV drivers be removed from
certain routes (Dkt. No. 63 at 9-10). Omnicare contends that
Dalton has twisted Pugh's testimony regarding his role as an AFDWV
lead driver/manager in an attempt to create an issue of fact as to
his time at Omnicare (Dkt. No. 66 at 3). It asserts that the
record is undisputed that Pugh had no authority to control,
discipline, or terminate AFDWV drivers while he was employed by
Omnicare. Id. at 3-5.

Under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201,
et seq., separate entities "that share control over an individual
worker may be deemed joint employers." Schultz v. Capital Intern.
Security, Inc., 466 F.3d 298, 305 (4th Cir. 2006). If a joint
employment relationship exists, both employers are jointly and
severally liable for any FLSA violations. Jacobson v. Comcast
Corp., 740 F. Supp. 2d 683, 688 (D. Md. 2010).

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING
IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

Whether employment is considered joint or separate "depends upon all the facts in the particular case." 29 C.F.R. § 791.2(a). A joint employment relationship generally exists where (1) employers have an arrangement to share an employee's services, for example, to interchange employees; (2) one employer acts, either directly or indirectly, in the interest of the other employer in relation to the employee; or, (3) the employers are not completely disassociated respecting the employment of a particular employee, and may share control of the employee because one employer controls, is controlled by, or is under common control with the other employer. 29 C.F.R. § 791(b).

When considering whether a joint employment relationship exists, the Court must "take[] into account the real economic relationship between the employer who uses and benefits from the services of workers and the party that hires or assigns the workers to that employer." Schultz, 466 F.3d at 306 (internal quotations omitted). "When evaluating a putative joint employment relationship, courts must effectuate the broad scope of the FLSA, while not construing the statute so broadly as to subsume typical independent contractor relationships." Jacobson, 740 F. Supp. 2d

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

at 689 (citing <u>Zheng v. Liberty Apparel Co.</u>, 355 F.3d 61, 69 (2d Cir. 2003)).

Although no "mechanical test" exists to evaluate the economic reality between employees and putative joint employers, most courts look to the following factors: (1) the authority to fire and hire employees; (2) the authority to supervise and control an employee's work schedule or employment conditions; (3) the authority to determine the rate and method of payment; and, (4) maintenance of employment records. <u>Jacobson</u>, 740 F. Supp. 2d at 689.

### A.    Authority to Fire and Hire

Omnicare first argues that it had no authority to hire or fire AFDWV couriers (Dkt. No. 60 at 10). Dalton admitted that she applied to work for AFDWV, not Omnicare, and signed an independent contractor agreement with AFDWV, not Omnicare. She did not receive assistance with her employment application from Omnicare, nor did she receive training from Omnicare once she was employed. After she became a lead driver/manager, Dalton did not seek approval from Omnicare before hiring AFDWV couriers. Omnicare was not involved in her promotion, nor were any Omnicare employees present when she was terminated.

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

In an attempt to create a genuine issue of material fact, Dalton argues that Pugh "testified to exercising control over the drivers by scheduling drivers, as well as hiring and firing drivers" (Dkt. No. 63 at 9). That portion of Pugh's deposition testimony, however, clearly relates to his time as a lead driver/manager for AFDWV (Dkt. No. 63-5 at 8). When discussing his role as Warehouse Manager at Omnicare, Pugh testified unequivocally that he had not hired, fired, or disciplined any AFDWV drivers. Id. No genuine dispute therefore exists that Pugh did not have the authority to hire or fire AFDWV drivers while working for Omnicare.

**B.    Authority to Supervise and Control Working Conditions**

Omnicare argues that it had no authority to supervise and control AFDWV drivers' work schedule or employment conditions (Dkt. No. 60 at 10). In support, it has proffered Dalton's testimony that (1) AFDWV, and not Omnicare, set her schedule; (2) Omnicare was not involved in compensation or payroll; (3) Omnicare did not issue 1099 Forms to AFDWV employees; (4) Omnicare did not provide any equipment to AFDWV employees, nor did it have any input as to what type of equipment AFDWV employees used; (5) AFDWV employees did not report any aspect of their job to Omnicare, including

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

vacation days; and, (6) Dalton did not inform Omnicare when she resigned her AFDWV management position. Id. at 10-11.

Dalton contends that a genuine issue of material fact exists because Pugh testified that he scheduled drivers, and because Omnicare and AFDWV use the same facilities (Dkt. No. 63 at 10). She further argues that Omnicare can request that certain drivers be removed from specific routes, with the expectation that AFDWV will honor those requests. Id. Dalton argues that Lockard's testimony, in particular, creates an issue of material fact as to whether Omnicare had the authority to unilaterally reassign an AFDWV driver. Id.

The evidence of record is clear that Omnicare did not control AFDWV employees' work conditions or schedules. Dalton admitted that Omnicare had no control over her sweep schedule, and would only assign stats on an emergency basis (Dkt. No. 59-2 at 83). Dalton never received an employee handbook or any equipment from Omnicare, including a scanner. Although AFDWV couriers used Omnicare "totes" to deliver pharmaceuticals, those totes were packed by Omnicare employees, sealed for security purposes, and labeled for delivery. The couriers returned the Omnicare totes at the end of each run.

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

Importantly, Omnicare did not have the authority to remove AFDWV couriers from a route if a customer complained. Both Lockard and Dalton testified that Omnicare, after receiving a complaint, relayed that information to AFDWV (Dkt. No. 59-2 at 7-8; Dkt. No. 59-5 at 8-9). If Lockard told an AFDWV representative that a courier would need to be reassigned, he "just communicat[ed] the issues" that a particular customer raised. Id. at 9. When asked what authority he had to get an AFDWV courier reassigned, Lockard clarified that he had no authority because the couriers "don't work for me. . . ." Id. Dalton thus has failed to create a genuine dispute of material fact as to whether Omnicare had authority over AFDWV couriers' working conditions.

**C.    Authority to Determine the Rate and Method of Payment**

Omnicare argues that, by Dalton's own admission, it had no authority to determine her rate or method of payment (Dkt. No. 60 at 10-11). According to Dalton, Omnicare was not involved in AFDWV's payroll process, did not issue her a Form 1099, and did not set her compensation rate. Dalton did not cite to any evidence of record that would indicate to the contrary; the Court therefore finds that no material fact is in dispute as to this element.

19

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING
IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

### D.   Maintenance of Employment Records

Finally, Omnicare contends that it maintained no employment
files or records for Dalton (Dkt. No. 60 at 11).  Despite listing
Omnicare as her employer on her resume, Dalton admitted that
putative future employers could call Omnicare, but that no file on
her existed there (Dkt. No. 59-2 at 93).  Again, Dalton failed to
cite any evidence establishing that Omnicare maintained her
employment records.

Nonetheless, Dalton argues that the Court should refrain from
granting summary judgment because she is "arguably an integrated
part of the production of the business" (Dkt. No. 63 at 11).  See
Rutherford Food Corp. v. McComb, 331 U.S. 722, 730-31 (1942)
(affirming the appellate court's decision that a group of
slaughterhouse boners were employees of the slaughtering plant for
purposes of the FLSA).  In that seminal case, the Supreme Court
found that a group of meat boners, who worked as "independent
contractors" under the supervision of an experienced boner paid to
"assemble a group of skilled boners to do the boning at the
slaughterhouse," were "part of the integrated unit of production
under such circumstances that the workers performing the task were
employees of the establishment."  Id. at 724, 729.

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

The Court in Rutherford found it significant, however, that the boners "had no business organization that could or did shift as a unit," and that the boning work "was more like piecework than an enterprise that actually depended for success upon the initiative, judgment, or foresight of the typical independent contractor." Id. at 730. By way of contrast, the couriers working for AFDWV have a business organization that can-and does-shift depending on with whom they contract. The work of a courier, furthermore, is dependent upon individual initiative and foresight.

In the sixty-eight years since Rutherford was decided, courts in this Circuit have repeatedly distinguished it based on its unique facts. See Jacobson, 740 F. Supp. 2d at 690 (distinguishing Rutherford on the basis that control over putative employees is probative of employment only when that oversight amounts to control of the terms and conditions of the plaintiff's employment); Salinas v. Commercial Interiors, Inc., No. JFM-12-1973, 2014 WL 6471638, at *3 (D. Md. Nov. 17, 2014) (distinguishing Rutherford, where the slaughterhouse "devised an unconventional and unprincipled scheme to avoid its responsibilities under the FLSA to persons working on its own assembly line," from the situation where a subcontractor

and sub-subcontractor relationship has "traditionally been recognized in the law").

In the Court's view, the relationship between Omnicare and AFDWV is of a type that has "traditionally been recognized in the law," and is not a scheme for Omnicare to avoid its responsibilities as an employer. See id. Therefore, for all of the reasons discussed, the Court **FINDS** that no genuine dispute of material fact exists as to Omnicare's status as a joint employer, and that Omnicare is entitled to judgment as a matter of law.  It therefore **GRANTS** Omnicare and AFDWV's motions for summary judgment as to Count One of Dalton's complaint, and **DISMISSES WITH PREJUDICE** Omnicare as a defendant in this case.

## III.  Count II:  Employee or Independent Contractor Under the FLSA

AFDWV argues that the Court should grant it summary judgment as to Count II of Dalton's complaint because she has failed to establish that she was an employee under the FLSA, rather than an independent contractor (Dkt. No. 58 at 18).  Dalton contends that she was misclassified as an independent contractor and that the "economic reality" of her relationship with AFDWV compels the conclusion that she was an employee (Dkt. No. 65 at 12-13).

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING
IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

In Count II, Dalton seeks earned wages, benefits, taxes, and overtime under the FLSA (Dkt. No. 4-1 at 8). Dalton must show that she is "an employee" to avail herself of the FLSA's minimum wage and maximum hours provisions. <u>Schultz</u>, 466 F.3d at 304; <u>see also</u> <u>Scruggs v. Skylink, Ltd.</u>, No. 3:10-0789, 2011 WL 6026152, at 2 (S.D.W. Va. Dec. 2, 2011) (Chambers, J.) (stating that it is the plaintiff's burden to establish an employment relationship). Whether a worker is an employee or independent contractor is a question of law. <u>Schultz</u>, 466 F.3d at 304 (citing <u>Brock v. Mr. W Fireworks, Inc.</u>, 814 F.2d 1042, 1044-45 (5th Cir. 1987)). Summary judgment on the question of whether a worker is an independent contractor or an employee is only appropriate if no "disputes of material historical facts" exist. <u>Scruggs</u>, 2011 WL 6026152, at *2.

An "employee" is defined in the FLSA as "any individual employed by an employer." 29 U.S.C. § 203(e)(a). An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Courts look to the "economic reality" of the relationship between a worker and a putative employer when determining whether an employment relationship exists. <u>Schultz</u>, 466 F.3d at 304 (quoting <u>Henderson v. Inter-Chem Coal Co.</u>, 41 F.3d 567, 570 (10th Cir.

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

1994)).  "The focal point is whether the worker 'is economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself.'"  Id.

Courts routinely apply a six-factor test to determine whether a worker is an employee or an independent contractor.  These factors, often referred to as the Silk factors, include: (1) the degree of control a putative employer exercises over the manner in which the worker performs the work; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other works; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and, (6) the degree to which the services rendered are an integral part of the putative employer's business.  Id. at 304-05 (citing Herman v. Mid-Atlantic Installation Servs., Inc., 164 F. Supp. 2d 667, 671 (D. Md. 2000)); see also United States v. Silk, 331 U.S. 704 (1947).  No single Silk factor is dispositive.  Id. at 305.

The Court must first look to the nature and degree of control exercised by AFDWV over Dalton.  See Schultz, 466 F.3d at 304.  In determining whether AFDWV exercised control over Dalton of the type typically exercised by an employer over its employees, courts have

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING
IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

considered details such as "whether workers may choose how much and
when to work, . . . whether they must wear uniforms, and how
closely their work is monitored and controlled by the purported
employer." <u>Scruggs</u>, 2011 WL 6026152, at *3 (internal quotation
marks omitted). Generally, if a putative employer provides
"specific direction for how workers, particularly low-skilled
workers, are to perform their jobs, courts have weighed the control
factor in favor of employee status." <u>Id.</u> (internal quotation marks
omitted).

After a thorough review of the evidence of record, the Court
finds that a genuine dispute exists as to the following material
facts, which weigh on AFDWV's control over Dalton: (1) whether she
was required to use AFDWV equipment, including a laptop and
scanner; (2) whether she was required to wear a AFDWV uniform; (3)
whether she could truly choose her own schedule, particularly in
light of the fact that she was terminated for missing a "stat" run;
and, (4) whether AFDWV, despite its policy of honoring couriers'
chosen work assignments, could unilaterally assign couriers to
different routes.

An examination of the remainder of the <u>Silk</u> factors reveal
similar disputes as to material facts. Although Dalton had

25

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

significant opportunities for "profit or loss" in the limited sense that she could choose how many sweeps and stats to perform, she was compensated a fixed amount per route (or per mile). Also, it is unclear whether AFDWV couriers had to provide all of the necessary equipment for performing their work, or whether AFDWV forced them to use AFDWV scanners and deducted a fee from their pay. See supra, n. 4. Finally, Dalton's services as a courier were absolutely integral to AFDWV's business. Without couriers like Dalton, AFDWV would be unable to fulfil its contractual obligation to deliver pharmaceuticals to Omnicare customers.

Due to such "disputes of material historical facts," summary judgment on the question of whether Dalton is an independent contractor or an employee is inappropriate. Scruggs, 2011 WL 6026152, at *2. The Court therefore **DENIES** AFDWV's motion for summary judgment as to Count II.

## IV. Counts IV and V: Wrongful/Retaliatory Termination

In Count IV, Dalton seeks damages for wrongful and retaliatory termination under the FLSA and the common law of West Virginia (Dkt. No. 4-1 at 8-9). In Count V, Dalton claims that AFDWV violated the West Virginia Human Rights Act, W. Va. Code § 5-11-1, et seq., by terminating her in retaliation for opposing its

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

directive to discharge minority employees for racially motivated reasons. Id. at 9-11.

### A. The FLSA

Dalton claims that AFDWV violated the FLSA by terminating her in retaliation for "questioning the Defendants regarding legally-due back wages, scanning fees, and for resisting Defendants' directive to terminate or constructively discharge minority drivers. . . ." (Dkt. No. 4-1 at 9). To state a prima facie case of retaliation under the FLSA, Dalton must establish that (1) she engaged in protected activity, (2) AFDWV took action against her, and (3) a causal connection existed between the two. 29 U.S.C. § 215(a)(3); Jafari v. Old Dominion Transit Management Co., 913 F. Supp. 2d 217, 226 (E.D. Va. 2012). Under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the burden then shifts to AFDWV to provide a legitimate, non-retaliatory reason for the termination. Jafari, 913 F. Supp. 2d at 226. Finally, if AFDWV articulates a legitimate, non-retaliatory reason for the discharge, the burden shifts back to Dalton to demonstrate, by a preponderance of the evidence, that the proffered reason was mere pretext for unlawful retaliation. Id.

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

Although internal complaints about FLSA violations are protected conduct, <u>Minor v. Bostwick Labs., Inc.</u>, 669 F.3d 428, 432 (4th Cir. 2012), such complaints must "clearly raise a FLSA issue." <u>Jafari</u>, 913 F. Supp. 2d at 226. This means that the complaint must be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by [the FLSA] and a call for their protection." <u>Kasten v. Saint-Gobain Performance Plastics Corp.</u>,131 S.Ct. 1325, 1335 (2011).

As an initial matter, Dalton is unable to pursue her claim that she was discharged in retaliation for refusing to terminate the African-American couriers under the FLSA. The protections of § 215 are limited to Dalton's assertion of rights protected by the FLSA. Dalton claims that she engaged in protected activity by informing AFDWV about drivers' complaints about miscalculated "wait time," which was never fixed by AFDWV (Dkt. No. 65-3 at 14-15). She also alleges that she complained to AFDWV managers Friday, Frummage, and Ericka Charlton ("Charlton") that scanner fees were improperly deducted from her pay. <u>Id.</u> at 11.

Internal, oral complaints are often sufficient to state a viable claim for retaliation under the FLSA. <u>Bostwick</u>, 669 F.3d at

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING
IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

432.  An internal complaint, however, must be clear enough to put
the employer on notice that the employee is asserting a right
protected by the FLSA.  <u>Jafari</u>, 913 F. Supp. 2d at 226-27.  As to
incorrectly calculated wait time, Dalton testified that she would
"e-mail [Charlton] back the name of the [complaining] courier and
the amount of wait time.  And she would enter it" (Dkt. No. 65-3 at
14).   Dalton complained about the scanner issue on multiple
occasions, texting Friday that "every pay period they take scanner
fees out of my check.  I'm not running anything.  Can you please
fix this?" (Dkt. No. 65-9 at 2).   When she resigned as lead
driver/manager, Dalton e-mailed Friday, stating in relevant part
that she has "been dispatching for no extra money, [and] money is
being taken out of my check for scanner fees when I did no
deliveries . . . ."   <u>Id.</u> at 3.   Dalton's complaints were
sufficiently clear to put a reasonable employer on notice that she
was invoking the protection of the FLSA.  <u>See Jafari</u>, 913 F. Supp.
2d at 227.

Likewise, Dalton has established a <u>prima</u> <u>facie</u> case that (1)
adverse employment action occurred, and (2) the adverse action was
causally connected to her protected action.  <u>See id.</u> at 228.  It is
undisputed that Dalton was terminated, and her termination occurred

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

a little over one month after she stepped down as lead driver/manager and complained about the improper scanner fees (Dkt. No. 59-2 at 47, 110). See id. ("The causal connection [between complaining and termination] is strengthened by a short period of time between the protected activity and adverse action").

AFDWV has articulated a legitimate, non-discriminatory reason for Dalton's termination: her failure to deliver a package set for "stat" delivery. See id. AFDWV's burden is one of production, and not persuasion. Id. (citing Holland v. Wash. Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007)). The burden thus returns to Dalton to prove that the articulated justification is mere pretext. Id. at 229.

At the summary judgment stage, Dalton's burden "merges with the ultimate burden of persuading the court that [she] has been the victim of intentional discrimination." Id. (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981)). It is not this Court's province to "decide whether the [articulated] reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [employee's] termination." Id. (quoting Burdine, 450 U.S. at 299). An employee cannot argue that the employer's reasons for the termination "are a lie or even

30

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING
IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

incorrect. . . [r]ather, the employee must show that an illegal
intent motivated the dismissal." <u>Id.</u>  On summary judgment, the
Court must consider (1) the strength of Dalton's prima facie case;
(2) the probative value of the proof that AFDWV's explanation is
false; and, (3) any other evidence that supports the employer's
case and that properly may be considered on a motion for judgment
as a matter of law.  <u>See id.</u> (citing <u>Price v. Thompson</u>, 380 F.3d
209, 214 (4th Cir. 2004)).

     After considering all of the relevant facts, the Court
concludes that Dalton had failed to produce evidence by which a
reasonable juror could conclude that she lost her job as a result
of retaliation forbidden by the FLSA.  <u>Id.</u> at 230.  The AFDWV
managers who were aware of Dalton's earlier complaints–Friday,
Frummage, and Charlton–were not the final decision makers in her
termination, which was unilaterally decided by Pugh (Dkt. No. 57-7
at 5).[6]  Notwithstanding the questionable wisdom of terminating a
longtime employee for failing to deliver a package that another
employee later delivered, AFDWV's explanation for Dalton's

---

[6] Although Dalton testified that she knew "in her heart" that
Charlton and Friday had told Pugh to terminate her contract, she
admitted that she had no evidence of any such occurrence (Dkt. No.
59-2 at 53).

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING
IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

termination has remained consistent and unwavering. Simply put,
Dalton has failed to provide any evidence that an "illegal intent"
on the part of AFDWV motivated her dismissal. Id. at 229. Her
disagreement with AFDWV's proffered explanation "is not substantive
proof that the reasons [for termination] are pretextual." Id. at
230. No material facts are in dispute, particularly because Pugh,
the manager who fired Dalton, was not associated with AFDWV at the
time Dalton complained of the potential FLSA violations. Dalton
has failed to proffer evidence that Pugh somehow became aware of
her complaints or, even if he was aware, that those complaints
somehow factored into her termination. The Court therefore **GRANTS**
AFDWV's motion for summary judgment as to Dalton's retaliation
claim under FLSA.

**B.    West Virginia Human Rights Act**

Dalton claims that AFDWV violated the West Virginia Human
Rights Act ("WVHRA"), W. Va. Code § 5-11-1, et seq., by terminating
her for opposing a practice she believed would violate the WVHRA
(Dkt. No. 4-1 at 10-11). Specifically, Dalton contends that she
was terminated for refusing to discharge minority employees, which
she believed, in good faith, to be racially discriminatory. Id.;
W. Va. Code § 5-11-9(7)(C).

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING
IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

Dalton must establish the following elements to state a prima
facie claim for retaliatory discharge under the WVHRA: (1) she was
engaging in protected activity; (2) her employer was aware of the
protected activity; (3) her employer took adverse action against
her; and, (4) the adverse action was retaliatory or, in the absence
of such evidence, was "sufficiently temporally related to the
protected activity to allow an inference of retaliatory motive on
the part of the employer." Mace v. Pizza Hut, Inc., 377 S.E.2d
461, 463 (W. Va. 1988). After Dalton establishes her prima facie
case, the burden shifts to AFDWV to articulate a legitimate, non-
discriminatory reason for her termination. Cooper v. Norfolk and
Western Ry. Co., 870 F. Supp. 1410, 1418 (S.D.W. Va. 1994).
Finally, Dalton has the opportunity to rebut AFDWV's proffered
reason as mere pretext. Id.

Dalton has established that she was engaging in activity
protected under the WVHRA when she opposed the termination or
"phasing out" of the three African-American employees. Despite
AFDWV's admonition that Dalton never "complained (internally or
externally) about any discriminatory treatment . . .," the evidence
of record supports Dalton's contention that she "opposed" the
proposed transfer or termination of the employees insofar as she

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING
IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

failed to terminate them (Dkt. No. 58 at 21-22; Dkt. No. 65-3 at
16-17).

Dalton, however, has failed to provide any evidence that
Friday, Pugh, or any other AFDWV employee was aware of her
"opposition." Indeed, Dalton testified that Lockard, an Omnicare
employee, asked her to "relocate" or "reassign" the three employees
(Dkt. No. 59-2 at 57-60, 91). Similarly, Friday instructed Dalton
to "phase out" the employees by assigning them to stat deliveries
only (Dkt. No. 59-2 at 62). Dalton testified that she put two of
the three drivers on different routes, and the remaining driver on
stat delivery (Dkt. No. 63-3 at 17). Dalton has failed to produce
any evidence that she complained to Friday, or anyone else at
AFDWV, of race-based discrimination (Dkt. No. 57-5 at 7).

Even if Dalton had complained, she has failed to establish
that her termination was causally linked to her opposition. The
meeting between Dalton, Lockard, and Pugh occurred in early March,
2013, following which Dalton was promoted to lead driver/manager.
Dalton alleges that she later stood up for one of the drivers,
Charlie Heard, who was only receiving short stat deliveries (Dkt.
No. 65-3 at 17). It was over six months later that Dalton was
terminated for allegedly failing to deliver a package. She has

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

failed to produce any evidence beyond her personal belief linking the March, 2013, incident and her termination (Dkt. No. 57-3 at 28). Mackey v. Shalala, 360 F.3d 463, 469-70 (4th Cir. 1996) (affirming the district court's grant of summary judgment when the plaintiff's "self-serving" allegations of a causal connection between protected action and retaliation "absent anything more, are insufficient to establish a prima facie case of discrimination"). Furthermore, the two incidents are too temporally remote to infer a connection. See Syl. pt. 6, Conrad v. Szabo, et al., 480 S.E.2d 801, 814 (W. Va. 1996). For all these reasons, the Court concludes that Dalton has failed to establish a prima facie case under the WVHRA, **GRANTS** AFDWV's motion for summary judgment as to Count V, and dismisses that count **WITH PREJUDICE**.

### C. Violation of West Virginia Public Policy

In Count IV of her complaint, Dalton alleges that AFDWV violated the public policy of West Virginia by terminating her employment in retaliation for her "refusal to breach the public policies of the States of West Virginia." (Dkt. No. 4-2 at 8-10). It is clear that retaliating against an employee for opposing a practice that she believes violates the WVHRA is against the policy of the State of West Virginia. Syl. pt. 11, Hanlon v. Chambers,

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

464 S.E.2d 741 (W. Va. 1995).  It is equally clear, however, that Dalton's claim for common law retaliatory discharge is preempted by the WVHRA.  Burgess v. Gateway Communications, Inc.-WOWK TV, 984 F. Supp. 980, 983 (S.D.W. Va. 1997) ("A victim of unlawful discrimination is limited to the remedy afforded him under the [WVHRA]. . . ."); see Taylor v. City Nat'l Bank, 642 F. Supp. 989, 998 (S.D.W. Va. 1986).  The Court therefore **GRANTS** AFDWV's motion for summary judgment and **DISMISSES WITH PREJUDICE** Count IV.

**V.    Count VI:  West Virginia Wage Payment and Collection Act**

In Count VI, Dalton alleges that AFDWV violated the West Virginia Wage Payment and Collection Act ("WPCA"), W. Va. Code § 21-5-4, et seq., by (1) failing to pay her all wages and benefits due within four business days of her termination; and, (2) forcing her to use her wages to purchase company merchandise or services, in the form of uniforms and scanning fees (Dkt. No. 4-2 at 11-12).

Pursuant to W. Va. Code § 21-5-4(b) (2013), an employer discharging an employee is obligated to "pay the employee's wages in full no later than the next regular payday or four business days, whichever comes first."  W. Va. Code § 21-5-4(b).[7]  If an

_____

[7] The version of the WPCA cited herein, which was subsequently amended effective June 10, 2015, was effective at the time of

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

employer fails to pay an employee's wages in a timely manner, the employer is liable to the employee for all unpaid wages plus "three times that unpaid amount as liquidated damages." W. Va. Code § 21-5-4(d).

"Wages" are defined by the WPCA as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." W. Va. Code § 21-5-1(c). "Wages" also include "accrued fringe benefits capable of calculation and payable directly to an employee." Id. "Fringe benefits" are "any benefit" provided by an employer to an employee, whether or not required by law, which can include "regular vacation, graduated vacation, floating vacation, holidays, sick leave, personal leave, production incentive bonuses, sickness and accident benefits and benefits relating to medical and pension coverage." W. Va. Code § 21-5-1(l).

Dalton alleges that unpaid wait time amounts are "wages" within the meaning of the WPCA (Dkt. No. 65 at 27). AFDWV seems to assume that the amounts owed for wait time were fringe benefits. The Court's reading of the term "fringe benefits," however, encompasses any benefit given by an employer to an employee outside

_____

Dalton's discharge.

37

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

of her regular wages. <u>See</u> W. Va. Code § 21-5-1(l). Wages, on the other hand, are compensation for labor or services, no matter how calculated. W. Va. Code § 21-5-1(c). Dalton's unpaid "wait time" therefore fits within the category of "wages," as it was meant to compensate her for her time spent waiting for Omnicare pharmacists to get the totes ready for delivery. It seems to be undisputed that AFDWV did not pay Dalton any wait time wages within the appropriate statutory time frame. It is unclear, however, whether Dalton herself can calculate the amount of past due wages. Taking all facts in the light most favorable to Dalton, the Court assumes that, at trial, Dalton will be able to calculate and prove by a preponderance of the evidence her past due wages for wait time.

Dalton also claims that she was forced to purchase company merchandise and to pay for company services in the form of scanner fees, all in violation of the WPCA. Pursuant to W. Va. Code § 21-5-5, it is a misdemeanor for employers to coerce or compel employees "to purchase goods or supplies in payment of wages due him, or to become due him, or otherwise . . . ." W. Va. Code § 21-5-5. As the Court has previously determined, a genuine dispute exists as to whether Dalton was forced to use AFDWV's scanner–and pay the 3.5% fee–or had the choice to utilize her cell phone as a

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

scanner. Moreover, it is undisputed that AFDWV forced employees to purchase uniforms, the cost of which are then deducted from employee pay.

For all of the reasons discussed, genuine issues of material fact exist as to whether AFDWV failed to pay Dalton wages for wait time and Dalton was forced to pay for company services and merchandise. The Court therefore **DENIES** AFDWV's motion for summary judgment as to Count VI.

## VI.  Count VII: Intentional Infliction of Emotional Distress

In Count VII, Dalton alleges that AFDWV "initiated an intentional and malicious program to humiliate, embarrass, and harass [her]," which culminated in her termination, causing severe emotional distress (Dkt. No. 4-1 at 12). Dalton contends that she has suffered severe humiliation, emotional distress, and physical distress, resulting in "medical costs in the form of medical and psychological treatment." Id. at 13.

AFDWV asserts that Dalton's claim for intentional infliction of emotional distress is preempted by her statutory claims under the FLSA and the WVHRA (Dkt. No. 58 at 25). See Jansen v. Packaging Corp. Of Amer., 123 F.3d 490, 493 (7th Cir. 1997) (per curiam) (holding that a plaintiff's common law infliction of

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING
IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

emotional distress claim was preempted when it was supported by the
same factual allegations underlying her Title VII claim).  Dalton
failed to address AFDWV's preemption argument, contending instead
that AFDWV's actions rose to the level of outrageous conduct (Dkt.
No. 65 at 27).

If Dalton's claim for intentional infliction of emotional
distress is factually identical to her claim under the FLSA or the
WVHRA, Count VII is clearly preempted.  Knox v. Wheeling-Pittsburgh
Steel Corp., 899 F. Supp. 1529, 1535-36 (N.D.W. Va. 1995) (Stamp,
J.) (dismissing as preempted the plaintiff's tort of outrage claim,
which was identical to her Title VII and WVHRA claims).  In Count
VII, Dalton alleges that AFDWV "initiated an intentional and
malicious program to humiliate, embarrass, and harass" her, which
culminated in her "abrasive, confrontational, vulgar, and
intimidating termination" (Dkt. No. 4-1 at 12-13).  The factual
allegations in Count VII are identical to those in Counts IV and V,
where Dalton claims that AFDWV, acting with "malice, oppression,
deceit and with the intent to injure . . ." wrongfully discharged
and terminated her employment.[8]  Id. at 9-11.  AFDWV's motion for

_____

[8] Although Dalton never addresses AFDWV's preemption argument,
she acknowledges that the same conduct underlies Counts IV, V, and
VII (Dkt. No. 65 at 28 ("Employees for the Defendants conspiring to

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

summary judgment as to Count VII is clearly meritorious and the Court therefore **DISMISSES** the same **WITH PREJUDICE.**

### SUMMARY OF THE COURT'S RULINGS

For the reasons discussed, the Court:

1.  **GRANTS** Omnicare's motion for summary judgment (Dkt. No. 59);

2.  **DISMISSES WITH PREJUDICE** defendants Act Fast Delivery, Inc., and Omnicare;

3.  **GRANTS IN PART** AFDWV's motion for summary judgment (Dkt. No. 57) and **DISMISSES** Counts I, IV, V, and VII **WITH PREJUDICE**; and,

4.  **DENIES IN PART** AFDWV's motion for summary judgment (Dkt. No. 57) as to Counts II and VI.

It is so **ORDERED.**

---

commit violations of both Federal and West Virginia anti-discrimination and human rights laws is outrageous conduct")).

**MEMORANDUM OPINION AND ORDER GRANTING OMNICARE'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59], AND GRANTING IN PART AND DENYING IN PART ACT FAST'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 57]**

The Court directs the Clerk to transmit copies of this Order to counsel of record and to enter a separate judgment order.

DATED:  October 9, 2015.


                                        /s/ Irene M. Keeley
                                        IRENE M. KEELEY
                                        UNITED STATES DISTRICT JUDGE